OPINION
Defendant-appellant Frances Burnem appeals from the January 19, 2001, Judgment Entry of the Tuscarawas County Court of Common Pleas.
 STATEMENT OF THE FACTS AND CASE
On September 1, 1998, appellee Ernest V. Burnem filed a Complaint for Divorce in the Tuscarawas County Court of Common Pleas. Appellant Frances Burnem filed an answer and counterclaim for divorce on November 24, 1998.
The matter proceeded to trial before the Magistrate on September 24, 1999. Appellant and appellee were the only witnesses to testify at trial. The following evidence was adduced at trial and through discovery.
Appellant and appellee were married on September 28, 1989, in Vejea, Denmark. This union was the third marriage for both parties. No children were born as issue of the marriage.
Following the parties' wedding, appellant and appellee resided in Germany until July 4, 1997, when appellee returned to the United States. Believing appellee would purchase a home in both their names, appellant agreed to give appellee $73,100.00 from the parties' joint account. Appellee used the money to purchase a home in New Philadelphia, Ohio, in his name alone. Appellant was unaware of the status of the deed until the commencement of this action. The parties stipulated that the fair market value of the house is $61,000.00. There is no record evidence of appellee's use of the remainder of the funds taken from the joint account, which totaled $12,100.00. The parties had minimal contact following appellee's relocation to the United States.
Throughout the course of the marriage, both appellant and appellee were employed and both were employed full-time at the time of the trial. Appellant's 1998 income, as shown on her federal tax return, was $34,846.00.[1] Appellant also earned interest income in the amount of $6,202.00. Appellant's income for the first eight months of 1999, was $25,861.20. Although appellant, who is currently employed as a bank teller for the community bank at a United States military base in Germany, is not required to pay United States income taxes, she has her employer withhold money for taxes, and then receives a full refund each year.
Appellee is employed as a line worker for Ohio Power. In 1998, he earned $21,396.00 in wages, $1,632.00 in unemployment compensation, and $136.00 in interest income. Each month, appellee receives a military pension in the amount of $934.00, and a partial disability pension in the amount of $184.00. As of September 25, 1999, appellee's wages were $24,791.09.
Prior to the parties' marriage, appellant held a certificate of deposit ("CD") in the amount of approximately $15,000.00. Appellant did not disclose the existence of the CD to her husband until her deposition, four days before trial. Each year, over the course of the marriage, appellant added her federal income tax refund, her two bonuses, her interest earnings, and her other savings to the CD. The value of the CD was approximately $81,000.00 at the time of trial. Appellee testified he had savings between $5,000.00 and $6,000.00 prior to the marriage. Additionally, he stated he deposited $12,000.00 of his Texas State Teachers Retirement benefits into the parties' joint account.
The Magistrate issued his decision on November 10, 1999. The Magistrate, in his Decision, recommended that appellant receive $29,651.80 more in marital assets than appellee as a distributive award. The Magistrate specifically found that such an award was appropriate since appellant supported appellee during the parties' marriage with her own funds while appellee used his income for his own needs. The Magistrate further recommended that the parties be responsible for their own attorney fees. Via Judgment Entry filed January 20, 2000, the trial court overruled the parties' separate objections to the Magistrate's Decision, and approved and adopted the Magistrate's recommendations as the order of the court.
Appellee timely appealed from the trial court's January 20, 2000, Judgment Entry, raising the following assignments of error:
 I. THE TRIAL COURT ERRED IN MAKING A DISTRIBUTIVE AWARD WITHOUT FINDINGS OF FACT TO SUPPORT THE AMOUNT OF THE DISTRIBUTIVE AWARD.
 II. THE TRIAL COURT ERRED IN COMPUTING THE PARTIES' NET WORTH.
In addition, appellant filed a cross-appeal.[2]
Pursuant to an Opinion filed on September 28, 2000, this Court affirmed the judgment of the trial court in part and reversed the same in part. In our September 28, 2000, Opinion, we overruled appellee's first assignment of error holding, in part, as follows:
 Herein, the trial court approved and adopted the magistrate's recommendation wife should receive $29,651.80 more in assets than husband as a distributive award "due to her primary support of [husband] during the years of the parties' marriage, while [husband] used his income primarily for his own needs during that period." Magistrate's November 10, 1999 Decision at 9. In support of this recommendation, the magistrate found:
 20. During the time of the [parties'] residence together in Germany [wife] expended her net income for rent, utilities, food, and the [parties'] basic living expenses. [Husband] kept his net income during that period to himself and shared very little of it with [wife].
November 10, 1999 Decision at 6.
 We find the aforementioned finding provides this Court with a sufficient basis upon which to review the trial court's decision to make a distributive award to wife. Upon review, we do not find the trial court abused its discretion in determining a distributive award was equitable and appropriate.
However, with respect to appellee's second assignment of error, we agreed that the trial court erred in computing the parties' net worth. In so holding, we stated, in part, as follows:
 Upon review, we agree with husband and find the magistrate did not make any findings of fact relative to wife's 1998 tax refund, her two bonuses, the interest on the community bank account, and any other savings wife may have accumulated during 1998. Additionally, the magistrate made no findings relative to the evidence husband submitted regarding his premarital savings of approximately $5,000 and his depositing $12,000 from his Texas State Teachers' Retirement Benefit into the parties' joint account. As a result of the magistrate's failure to make such findings, this Court is unable to determine whether the computation of the parties' assets was appropriate.
For such reason, we remanded the matter to the trial court for further proceedings with respect to the property division.
Thereafter, oral hearings before the Magistrate were held on October 25, 2000, and November 27, 2000. The Magistrate, in a Decision filed on December 1, 2000, found that the parties effectively separated on July 4, 1997, when appellee returned to the United States and purchased a home in his name alone. For such reason, the Magistrate recommended that the trial court use such date for the division and distribution of marital property and that any property acquired by either party after such date be considered the parties' own property. The Magistrate further found that appellee had premarital savings of $5,000.00 and that appellee's retirement benefit of $12,052.81 was deposited on or about March 24, 1995, in the parties' joint account. Based on the foregoing, the Magistrate concluded that "[e]quity requires that the Plaintiff [appellee] be given credit for a total amount of $17,052.81 of his pre-marital property" and recommended that appellant be ordered to pay appellee such sum out of the $29,651.80 distributive award "which she received in order to compensate him for the assets which were not properly credited to him" in the trial court's prior decision.
Thereafter, both parties filed objections to the Magistrate's Decision. An oral hearing on the objections was held before the trial court on December 26, 2000[3]. Pursuant to a Judgment Entry filed on January 3, 2001, the trial court overruled appellant's objections and sustained appellee's objections. The trial court specifically:
 Held that the Court of Appeals' Opinion affirming the distributive award did not prevent the Magistrate from issuing a recommendation modifying the property division (or effectively modifying the distributive award).
 Held that the Magistrate's finding that July 4, 1997, should be used as the "end of marriage" date was contrary to law and simply arbitrarily chosen by the Magistrate.
 Held that the Magistrate's Decision failed to comply with the mandate of the Court of Appeals relative to appellant's 1998 tax refund, her two bonuses, the interest on the community bank account, and any other savings appellant may have accumulated during 1998.
 Entered findings on appellant's 1998 tax refund, her two bonuses, the interest on the community bank account, and any other savings appellant may have accumulated during 1998, finding that they totaled $24,749.27.
 Found that appellant's total net worth on the date of the divorce hearing (September 24, 1999) was $134,679.40, not $114,251.80 as the Magistrate had found on November 10, 1999.
 Found that appellee was entitled to credit for his pre-marital assets ($17,052.81) plus one-half of the wife's additional assets (one-half being $10,213.80)[4], for a total credit of $27,261.61.
 Applied the credit due to appellee ($27,261.61) against the distributive award ($29,651.80) and ordered appellee to pay the difference [$2,385.19] within 30 days.
Appellee, on January 12, 2001, filed a "Motion for Correction (Civ. R. 60[A]), and Alternative Motion for New Trial and For Relief From Judgment." Appellee, in his motion, argued that there was an error in the trial court's January 3, 2001, Judgment Entry. Appellee, in his motion, specifically argued as follows:
 . . . The Judgment appears to reflect a belief that Ernest Burnem [appellee] had a pre-existing obligation to make a payment to his former wife Frances for the distributive award $29,651.80. In fact, the Magistrate's Decision of 11/10/1999 provided for the distributive award in an amount precisely equal to what was necessary so that Frances Burnem [appellant] could retain the excess marital assets (according to the findings of the Magistrate at that time[5]) already in her control at the time. So, no money changed hands in 1999, nor was any judgment entered requiring money to change hands based on that Magistrate's Decision.
 On 09/28/2000, the Court of Appeals affirmed the distributive award, but reversed and remanded for additional findings and proceedings relating to Ernest's pre-marital assets, and Frances' additional earnings before the date of hearing. This Court's Judgment of 01/03/2001 made the findings required by the Court of Appeals[6], but then ordered Ernest to pay Frances an amount equal to the difference between the adjustment and the 1999 distributive award. Were Ernest to actually make the payment as provided in the 01/03/2001 Judgment Entry, the inequality in marital assets between these two parties would become even more unequal.
 Instead, the Judgment that correctly reflects the findings made by the Court would be to require Frances to pay Ernest the amount of $27,266.61. . . .
[Note: Footnotes 5 and 6 are paraphrased from appellee's January 12, 2001, motion]
As memorialized in a January 19, 2001, Judgment Entry, the trial court sustained appellee's motion and granted appellee judgment against appellant in the amount of $27,266.61.[7]
It is from the trial court's January 19, 2001, Judgment Entry that appellant now prosecutes her appeal, raising the following assignments of error:
I
 THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT VIOLATED THE REMAND ORDER OF THE FIFTH DISTRICT COURT OF APPEALS IN BURNEM V. BURNEM, CASE NO. 2000 AP 020019 DATED SEPTEMBER 28, 2000.
II
 THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED PREJUDICIAL ERROR WHEN IT OVERRULED THE MAGISTRATE'S FINDING OF FACT THAT THE MARRIAGE HAD DE FACTO
TERMINATED AS OF DATE OF SEPARATION JULY 4, 1997.
III
 THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING AND ORDERING THAT FUNDS ACCUMULATED AFTER DE FACTO
SEPARATION WERE MARITAL PROPERTY SUBJECT TO DIVISION.
 I
Appellant, in her first assignment of error, argues that the trial court committed prejudicial error by failing to comply with the remand order of this Court in Burnem v. Burnem (Sept. 28, 2000), Tusc. App. No. 2000AP020019. As is stated above, this Court, in our September 28, 2000, Opinion, found that the trial court did not abuse its discretion in determining that a distributive award to appellant in the amount of $29,651.80 was equitable and appropriate. Appellant now specifically contends that the trial court, in its January 19, 2001, Judgment Entry, improperly "reversed and modified a verdict of affirmance and distributive award in favor of Frances Burnem [appellant], to ordering a judgment against her in the sum of $27,266.61. . .".
As is stated above, this Court, in its September 28, 2000, Opinion, found that the trial court's determination that a distributive award to appellant in the amount of $29,651.80 was equitable and appropriate and did not constitute an abuse of discretion. However, in our opinion, we also sustained appellee's argument that the trial court erred in computing the parties' net worth. In sustaining such argument, we specifically stated as follows:
 Upon review, we agree with husband [appellee] and find the magistrate did not make any findings of fact relative to wife's [appellant's] 1998 tax refund, her two bonuses, the interest on the community bank account, and any other savings wife may have accumulated during 1998. Additionally, the magistrate made no findings relative to the evidence husband submitted regarding his premarital savings of approximately $5,000 and his depositing $12,000 from his Texas State Teachers' Retirement Benefit into the parties' joint account. As a result of the magistrate's failure to make such findings, this Court is unable to determine whether the computation of the parties' assets was appropriate.
For such reason, we remanded the matter to the trial court "for further proceedings with respect to the property division . . ."
Appellant cites the law of the case doctrine for the proposition that the trial court erred in modifying the distributive award and ordering a judgment against appellant in the sum of $27,266.61. "[T]he doctrine of the law of the case *** establishes that the `decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels.'" Pipe Fitters Union Local No. 392 v. Kokosing Constr.Co., Inc. (1998), 81 Ohio St.3d 214, 218, quoting Nolan v. Nolan (1984),11 Ohio St.3d 1, 3. "Absent extraordinary circumstances, such as an intervening decision by the Supreme Court, an inferior court has no discretion to disregard the mandate of a superior court in a prior appeal in the same case." Nolan, at syllabus. "Thus, where at a rehearing following remand a trial court is confronted with substantially the same facts and issues as were involved in the prior appeal, the court is bound to adhere to the appellate court's determination of the applicable law."Id. at 3.
We concur with appellant that the trial court violated this court's September 28, 2000, remand order. However, while appellant maintains that the trial court violated such order by failing to just issue findings of fact with respect to appellant's "1998 tax refund, her two bonuses, the interest of the Community Bank account and any other savings accumulated during 1998", we find that the trial court violated the same by failing to leave the $29,651.80 distributive award to appellant undisturbed. As is stated above, in our September 28, 2000, Opinion, we held that the trial court did not abuse its discretion in finding that the distributive award to appellant was equitable and appropriate. Thus, pursuant to the law of the case doctrine, the trial court was required to leave the $29,651.80 distributive award to appellant untouched. In order to leave that award untouched, the appellant must continue to receive $29,651.80 more of the marital assets than appellee.
However, the trial court failed to do so. The trial court, in its January 19, 2001, Judgment Entry, did not award appellant $29,651.80 more than appellee in marital assets. The trial court ordered appellant to pay appellee a total of $27,266.61. Once the $27,266.61 is deducted from $134,679.40 (appellant's total net worth of marital assets as of the termination of the marriage), appellant would receive a total of $107,412.79 in marital assets. In contrast, appellee would receive a total of $94,813.80 in marital assets ($84,600.00[8] plus $10,213.80[9]). Appellant, under the trial court's calculations, would only receive $12,598.99 more than appellee in marital assets ($107,412.79 minus $94,813.80 = $12,598.99). We find, therefore, that the trial court violated our remand order by failing to leave the $29,651.80 distributive award to appellant undisturbed.
However, while the trial court did not have the right to disturb the $29,651.80 distributive award to appellant, it did have the right to rearrange the property division following the remand since, pursuant to our September 28, 2000, Opinion, we remanded the matter to the trial court "for further proceedings with respect to the property division."
Upon our review of the record, we concur with appellant that the trial court erred in ordering appellant to pay $27,266.61 to appellee since the trial court's calculations were incorrect. The trial court in this matter found that, as of the date of termination of the marriage, appellant's net worth was $134,679.40 whereas appellee's net worth was $84,600.00, for a total joint net worth of $219,279.40. However, in calculating net worth, the trial court improperly included $17,053.00[10]
in assets that were found, by the trial court on remand, to be appellee'sseparate property. Once the $17,053.00 in separate property is deducted from the $219,279.40, we are left with a total of $202,226.40 in marital property to be divided between the parties. From such figure, the $29,651.80 distributive award to appellant must be deducted, leaving a balance of $172,574.60. Both appellee and appellant, in the case subjudice, are entitled to half of such figure, or $86,287.30 as marital assets.
Adding $86,287.30 to appellee's $17,053.00 in separate property reveals that appellee should have received a total of $103,340.30 in marital assets and separate property. Accordingly, since appellee already received $84,600.00, appellant should have been ordered to pay appellee $18,740.30 ($103,340.30 minus 84,600.00). We find, therefore, that the trial court erred when, in its January 19, 2001, Judgment Entry, it granted appellee judgment against appellant in the amount of $27,266.61. Rather, as is stated above, the trial court should have granted a judgment in favor of appellee and against appellant in the amount of $18,740.30.
Accordingly, appellant's first assignment of error is, sustained in part.
 II
Appellant, in her second assignment of error, contends that the trial court abused its discretion by overruling the Magistrate's finding of fact that the parties' marriage had de facto terminated as of July 4, 1997. The Magistrate, in his December 1, 2000, decision, specifically found that "these parties effectively separated on 7/4/97 when Plaintiff [appellee] returned to the United States. He purchased a home in his name alone. The parties had very little communication and contact with each other subsequent to that time." However, the trial court, in its January 3, 2001, Judgment Entry found that such finding was "contrary to law and simply arbitrarily chosen by the Magistrate." Appellant maintains that the trial court should have used the July 4, 1997, date as the termination date of the parties' marriage. We, however, disagree.
A trial court, may, in its discretion, use a de facto termination date when the date would be equitable. R.C. 3105.171(A)(2)(b). See alsoStafinsky v. Stafinsky (1996), 116 Ohio App.3d 781, 785. Otherwise, it is presumed that the final hearing date is the appropriate termination date of the marriage. Id. Such decision is discretionary and will not be reversed on appeal absent an abuse of discretion. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v Blakemore (1983), 5 Ohio St.3d 217.
At the November 27, 2000, hearing before the Magistrate, appellee testified that he returned to the United States without appellant on July 4, 1997. Appellee, when asked whether the parties had effectively separated on July 4, 1997, testified as follows:
Ah no.
Q. There was no separation?
A. No.
Q. I see what was it?
 A. I packed my clothes up and I explained this in Court before, when we went back to Germany the plan was to stay five years, accrue enough money to build a house. With those years got to carrying on and when it came down to it I told Frances in ah, around nineteen ninety-six late part of nineteen ninety-six early part of ninety-seven that I was coming back to the States, that we were gonna move back to a house, because I couldn't afford to retire in Germany. So the actual separation began, as the way I see it, is the day I filed for the divorce.
THE COURT:
 So, Mr. Burnem when you say you and Frances went back to Germany with the plan you were going to work there five years and then build the house, build a house where?
A. Here in the States, sir.
THE COURT:
Okay.
A. Ah.
THE COURT:
And Frances agreed to that?
 A. Yes, sir. I don't think I could afford to build a half million dollar house in Germany at those prices.
Transcript of October 25, 2000, and November 27, 2000, proceedings at 16-17. (Emphasis added.) Furthermore, during the September 24, 1999, trial before the Magistrate, appellant testified as follows:
 A. . . . [W]hen we first went to Germany, I said I would go for five years, make some money, and move back state and try to settle in, get a house, whatever. And then it got to dragging on, it went into six years, and seven years, and eight years, and finally, I started talking about going home and Frances didn't want to come back here because one of her famous sayings was, well, if you have to have a gun in the house, I don't want to live somewhere like that. Well, that is just part of America, I think. But then, between her bitching and griping about whatever it may have been. Finally, one day I think it was in January of `97, I told her I would be going home in July, by the first of July or the end of June. And she could come along if she wanted to, if she didn't, she could stay there. So I moved back to the states. . . . When I moved out there and Frances and Mr. Tripodi so graciously copied some of the cards and things that I sent to Frances trying to coerce her to come over here and that had an address on it and that had telephone numbers and I also sent her pictures after I had done the house, and I redone the entire house inside and out. I sent her pictures of every room in that house and the total outside trying to coerce her to come over here. I heard absolutely nothing until about last September.
Transcript of September 24, 1999, trial at 26-28.
Based on the foregoing, we find that the Magistrate's use of July 4, 1997, as a de facto termination date for the parties' marriage was not supported by the record. The trial court, therefore, did not abuse its discretion in overruling the Magistrate's finding of fact that the marriage had de facto terminated on July 4, 1997.
Furthermore, the Magistrate, in the case sub judice, did not enter findings as to the beginning and end dates of the parties' marriage. R.C. 3105.171, which is captioned division of marital property, states, in relevant part, as follows:
 (2) "During the marriage" means whichever of the following is applicable:
 (a) Except as provided in division (A)(2)(b) of this section, the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation;
 (b) If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property. If the court selects dates that it considers equitable in determining marital property, "during the marriage" means the period of time between those dates selected and specified by the court.
Pursuant to such section, the trial court found that September 24, 1999, the date of the trial before the Magistrate, was the date of termination of the parties' marriage. We cannot say that the trial court abused its discretion in so finding since such decision was not arbitrary, unconscionable or unreasonable.
Appellant's second assignment of error is, therefore, overruled.
 III
Appellant, in her third assignment of error, maintains that the trial court abused its discretion in finding and ordering that funds accumulated after July 4, 1997, the de facto termination date of the parties' marriage, were marital property subject to division.
Based on our finding with respect to appellant's second assignment of error, that September 24, 1999, rather than July 4, 1997, was the termination date for the parties' marriage, appellant's third assignment of error is overruled.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Tuscarawas County Court of Common Pleas is affirmed in part and reversed in part. The January 19, 2001, Judgment Entry of the trial court is modified to provide that appellee is granted judgment against appellant in the amount of $18,740.30. Costs to be paid 50% by the appellant and 50% by the appellee.
Edwards, P.J., Gwin concurs, Wise concurs separately.
[1] Appellant's salary fluctuates in accordance with the exchange rate between the U.S. dollar and the German mark.
[2] The trial court's January 20, 2000, Judgment Entry was never stayed.
[3] No transcript of the December 26, 2000, hearing was ordered by either party.
[4] Such figure was arrived at as follows: $134,679.40 minus 114,251.80 = $20,427.60. Half of $20,427.60 is $10,213.80.
[5] The 11/10/99 Magistrate's Decision found that the plaintiff Ernest Burnem controlled $84,600.00 in marital assets (Finding of Fact 23). It found that the defendant Frances Burnem controlled $114,251.80 (Finding of Fact 18). The Magistrate recommended a distributive award of $29,651.80 from Ernest to Frances — the precise amount necessary to avoid any actual transfer of cash from one to the other. Indeed, no money has changed hands since the divorce hearing.
[6] In the 12/01/2000 Magistrate's Decision on remand, the Magistrate considered Ernest's premarital assets and found that Ernest was entitled to credit for $17,052.81. The trial court's 01/03/2001 Judgment Entry made the required findings (pages 6-7) about Frances' additional marital assets (an additional $20,427.60, although the Judgment on page 7, states this amount as $20,427.06) bringing the amount of marital assets in her control to $134,679.40. Ernest is entitled to one-half ($10,213.80) of these marital assets. The sum of $10,213.80 and the $17,052.81 is $27,266.61, for which Ernest now seeks judgment.
[7] While there was a hearing before the trial court on appellee's motion on January 16, 2001, no transcript of such hearing has been prepared.
[8] The trial court found appellee's net worth to be $84,600.00.
[9] Appellee's one-half of the increase in value of marital assets in appellant's possession as found by the trial court on remand.
[10] Appellee in the case sub judice had a total of $5,000.00 in premarital savings in addition to $12,053.00 in retirement benefits, for total premarital separate property of $17,053.00.